```
 1                  UNITED STATES DISTRICT COURT

 2            WESTERN DISTRICT OF WASHINGTON AT SEATTLE

 3    _____
                                 )
 4    KAY ANNE VANDERBRUG, on behalf ) CV22-01707-BJR
      of herself and all others    )
 5    similarly situated,          ) SEATTLE, WASHINGTON
                                   )
 6                    Plaintiff,   ) August 8, 2024
      v.                           ) 10:00 a.m.
 7                                 )
      MAXSOLD INC.,                )
 8                                 ) MOTION HEARING via
                      Defendant.   ) ZoomGov platform
 9    _____  )

10    _____

11            VERBATIM REPORT OF PROCEEDINGS
          BEFORE THE HONORABLE BARBARA J. ROTHSTEIN
12              UNITED STATES DISTRICT JUDGE
      _____

13

14    APPEARANCES:

15    For the Plaintiff:      Alex Phillips
                              Samuel J. Strauss
16                            Strauss Borrelli PLLC
                              980 North Michigan Avenue
17                            Suite 1610
                              Chicago, IL 60611
18

19    For the Defendant:      Devon John McCurdy
                              Lane Powell PC
20                            1420 Fifth Avenue
                              Suite 4200
21                            P.O. Box 91302
                              Seattle, WA 98111-9402
22
                              Joseph P. Goldberg
23                            Hodgson Russ LLP
                              605 Third Avenue
24                            Suite 2300
                              New York, NY 10158
25
```

1          THE CLERK:  The United States District Court for the

2    Western District of Washington is now in session, the Honorable

3    Barbara J. Rothstein presiding.

4       Today we're here in the matter of Vanderbrug versus MaxSold

5    Incorporated, Cause No. 22-CV-1707, assigned to this court.

6       Counsel, please make your appearances for the record,

7    starting with plaintiff.

8          MR. PHILLIPS:  Good morning, Your Honor.  This is

9    Attorney Alex Phillips appearing for plaintiff.  I'm here along

10   with counsel, Sam Strauss, also for the plaintiff.

11         THE COURT:  Okay.  Good, let's see, morning to you.

12         MR. PHILLIPS:  It is noon here, so I appreciate the

13   clarification.

14         THE COURT:  All right.  Okay.

15      You're muted, Mr. McCurdy.

16         MR. McCURDY:  Thank you.

17      Good morning, Your Honor.  Devon McCurdy appearing for

18   Defendant MaxSold Incorporated.  With me today is Joseph Goldberg

19   of the firm of Hodgson Russ, which appeared in this matter

20   through Jillian Searles, who has since departed from the firm.

21         THE COURT:  Okay.

22         MR. GOLDBERG:  Good morning, Your Honor.

23      Just to be clear, I am not admitted pro hac, but I am here

24   today given your recent order.  I'm happy to speak to any issues

25   you wish me to address.

1      THE COURT:  Okay.

2    Well, Mr. McCurdy, I think you're the one the court needs to

3  hear from first, all right?  Do you want to bring me up to date,

4  including what you just filed, I guess it was last night or --

5      MR. McCURDY:  Yes, certainly, Your Honor.

6    And I suppose I will start with the end, which is our recent

7  efforts to contact the person that we have understood to be the

8  last remaining representative of our client, and that's Mr. Sath

9  Dosanjh.

10    And as indicated in my filing of yesterday, when we received

11  the court's order, I placed a phone call to the phone number that

12  Mr. Dosanjh had provided us to include in our withdrawal motion.

13  I found that to be a law firm in White Plains, New York, that did

14  not have knowledge of Mr. Dosanjh or MaxSold.

15    I followed that with a series of e-mails to Mr. Dosanjh and

16  also placed a few additional phone calls.  I called the number

17  that was given to us as the cell phone number of the MaxSold

18  representative who was in place when my firm opened this matter,

19  the person to whom we directed our engagement letter.  I left a

20  voicemail in a message box that contained sort of a generic

21  receiving message, so I'm not sure whether I reached that person

22  or not.  That call has not been returned.

23    I placed a call to the phone number on MaxSold's web page.

24  It's an 833 number.  I was able to reach a receptionist.  I asked

25  to speak to Mr. Dosanjh or to any other person in management.  I

1   explained the urgency of the matter, I explained that I

2   represented the company, and that I was ordered to produce a

3   company representative at this hearing.  I was told that

4   everybody was busy and that the message had been conveyed to

5   return my call.

6       Following that, I sent to Mr. Dosanjh another e-mail

7   containing the Zoom instructions for this hearing.  As I

8   indicated in what I filed yesterday, Mr. Dosanjh responded to

9   that, disclaiming that he's a representative of MaxSold Inc. and

10  saying that no such person exists.  He communicated that MaxSold

11  Inc., the U.S. entity, has no officers, directors, or

12  shareholders.

13      We had further communications by e-mail, after I had filed my

14  notice of yesterday, in an effort to persuade him to appear.  He

15  directed me to the bankruptcy trustee in Canada.  I placed a call

16  to that person.  That person provided me some further

17  information, including the name of the Canadian counsel who

18  represented the Canadian MaxSold entity in a sales transaction.

19  I placed a call to that Canadian lawyer and left a voicemail and

20  followed that with an e-mail, and I've had no response.

21      THE COURT:  Wow, I guess you have been busy,

22  Mr. McCurdy.

23      MR. McCURDY:  It feels like it, Your Honor, yes.

24      THE COURT:  It's somewhat frustrating to have done all

25  of that and still have to come here and tell me you can't comply

1    with my order, so ...

2        Okay.  Mr. Phillips, what do you have to say, given what

3    looks like the ultimate status of MaxSold, Mr. Dosanjh, and

4    whoever is supposed to be representing MaxSold in this country?

5            MR. PHILLIPS:  Yes, Your Honor.

6        You know, our first question would be -- and we were hoping

7    that MaxSold would appear today to answer this question -- is who

8    approved this settlement in the first place.  Because to set

9    context for Your Honor and to kind of give you an understanding

10   of why we're troubled by this situation, it really starts with

11   that fact.

12       We first settled this case in March.  It looked as though

13   everything was agreed and we were in a position to execute the

14   agreement -- it was not a complicated agreement -- but MaxSold's

15   counsel came back and told us that their client needed more time,

16   but assured us that it was just merely a signature, so we agreed.

17   Forty-five days came and went; we heard nothing.

18       We then requested a conference with Your Honor to set a

19   schedule for the case, and it was around that time that the

20   defense counsel first informed us of this bankruptcy.  At that

21   time, we were told that the bankruptcy was on behalf of a parent

22   organization in Canada.  Since briefing this motion to withdraw,

23   I have learned, based on my own research, that that is not true.

24   There is no parent company.  The only company is MaxSold

25   Incorporated.  And it's the same company that negotiated the

1  settlement agreement with us.  And the bankruptcy has been

2  pending since February.  So, in other words, the company that

3  agreed to settle with plaintiff had been in bankruptcy for a

4  month and then had kind of strung things along up through today.

5      So plaintiffs are in a difficult position because we don't

6  have a signed settlement agreement.  Now, we could move to

7  enforce this settlement agreement, and it appears that we would

8  likely win on default because MaxSold has no intention of

9  appearing, at least at this point, but, again, it has no

10  intention of paying any settlement because it has no intention of

11  responding to any of our communications, including its lawyers'

12  communications.

13      So we want to hear from MaxSold, like the court wants to hear

14  from MaxSold, mostly on its intention to ever pay this settlement

15  and whether it ever had an intention to pay this settlement.

16  Because if the company is in bankruptcy, if it had no intention

17  to pay the settlement, that would be material to its

18  dischargeability.

19      So plaintiff's position, based on MaxSold's failure to

20  appear, would be for the court to issue a contempt order ordering

21  it to appear, and that may provide the kind of requisite

22  incentive for MaxSold to produce someone.  In the meantime, we

23  would like defense counsel to remain in the case because although

24  they don't have a clear line of communication, plaintiff's

25  counsel will have no line; we will be left to call reception and

1  try and get ahold of somebody, but we're not going to be

2  successful in that.  Having defense counsel in this case will at

3  least give us some chance of success.

4          THE COURT:  Do you want to respond, Mr. McCurdy?

5          MR. GOLDBERG:  Your Honor, may I respond?  This is

6  Mr. Goldberg.

7          THE COURT:  Okay.

8          MR. GOLDBERG:  Yeah.  Thank you.

9      I think counsel has perhaps inadvertently misstated some of

10  the operative facts, and I would like to take a step back and

11  review them with the court and with all counsel.

12      There was an initial mediation in this case that took place

13  sometime in December of last year that was before Magistrate

14  Judge Jones.  It was followed by a second mediation, which took

15  place on or about the end of January of 2024.  I think on

16  March 6th, it was noticed, that was mainly to the court,

17  concerning the settlement.  Curiously enough, when plaintiff's

18  counsel originally drafted that notice, they themselves referred

19  to the settlement as "tentative" because there were many open

20  issues.  There were open issues concerning what would happen in

21  the event of a default, there were issues concerning the time of

22  initial payments, et cetera.  That notice, as I said, I believe

23  was filed with the court on or about March 6th of this year.

24      The gentleman that we had been dealing with on behalf of

25  MaxSold is a man named Russ Patterson.  Mr. Patterson and counsel

 1   were all operating in good faith.

 2        My understanding differs from plaintiff's counsel.  I

 3   understand that there is a Canadian company, a parent company,

 4   called MaxSold.  I understand that that company is in bankruptcy

 5   protection or whatever the specific term of art is that's used in

 6   Canada to explain that process.

 7        Sometime after March 6th, we were advised by Mr. Patterson

 8   that he did not have authority to execute any settlement,

 9   regardless of what the terms were, although he thought that it

10   was quite possible that settlement authority might be

11   forthcoming.  We worked with him, but he was taking his advice,

12   as I understand it, without getting too much into attorney-client

13   issues, from insolvency counsel and the trustee who was in charge

14   of matters.

15        So all parties were operating in good faith, but the fact of

16   the matter is, the parent company and the MaxSold USA parent

17   company went into bankruptcy, and MaxSold USA, as we understand

18   it, ceased operations.  There's no there there.

19        As we set forth in our initial application seeking to be

20   relieved as counsel, neither Mr. McCurdy nor myself have anyone

21   that we can speak to, consult with, or otherwise take

22   instructions from.  I leave aside the fact of our unpaid

23   invoices.  But it would serve no purpose in whole or in part to

24   keep us in the case.  Plaintiff's counsel can make whatever

25   decisions that they're free to make, but it's clear that all

1  companies are impecunious and there's going to be no payments

2  forthcoming of any sort.  And so, respectfully, we request to be

3  relieved from this case, and plaintiff can, at that point, take

4  whatever steps it feels appropriate and necessary.

5          THE COURT:  Mr. Phillips.

6          MR. PHILLIPS:  Thank you, Your Honor.

7      I have two kind of significant responses.  The first being,

8  with each filing and each conversation, we learn something new.

9  The conversation that we're having here today, we just learned

10  that the person that agreed to the settlement had no authority to

11  and the person that we relied on to issue the notice of

12  settlement with this court had no authority to do that.

13      I know counsel is referring to the settlement as "tentative,"

14  but I don't think that helps MaxSold or counsel's case.  If we

15  move to enforce the settlement agreement and it should fail, that

16  motion should fail, then we are back at square one, which is,

17  this a class action, and we can't just get a default action on a

18  class action proceeding.  We need class discovery and Your Honor

19  needs to certify the class.  That much is clear.

20      So in that circumstance -- does Your Honor have a question?

21          THE COURT:  No.  Why don't you finish and then I will

22  ask my question.

23          MR. PHILLIPS:  Okay.

24      So the circumstance that we're left with is, if we're not

25  moving forward with a settlement agreement or a motion to enforce

1   it, and should that fail, then we are back to class proceedings

2   and we do need class discovery.  We can't simply get a default

3   judgment under those circumstances.

4        THE COURT:  I'm curious, Mr. Phillips, what entity do

5   you intend to do discovery with?  I mean, as far as I can tell

6   from what I've heard, there's nothing there to -- who are you

7   going to contact?  I mean, even if I kept them in the case, if I

8   kept the attorneys in the case, the attorneys don't have the

9   materials you're seeking.  You need a client and there isn't

10  anyone there.  I mean, the only thing I have heard of that

11  actually is a client is in Canada in a bankruptcy proceeding.

12  Now, you can pursue discovery from them, but if you went to this

13  address seeking to pursue discovery, I'm not even sure there's

14  anybody at the address.  I guess there's a receptionist.  But I

15  just don't see what you -- you know, I mean, sometimes there are

16  class actions against corporations that go out of business, and

17  guess what, that's the situation I think you are confronted with.

18  I don't understand how you plan to do discovery.  Maybe you can

19  enlighten me.

20       MR. PHILLIPS:  Your Honor, I think this is why we need a

21  contempt order.  We're hearing a lot of this information

22  secondhand through counsel, but, to date, we haven't heard from

23  MaxSold whatsoever.

24       And I do want to clarify that the company that we're

25  referring to both in Canada and the U.S. appears to be the same

1  company.  The company is still operating.  Their counsel is

2  telling us that there are no operations in the U.S., but we

3  haven't heard that from MaxSold and we haven't heard that MaxSold

4  has closed its doors.  It appears to want to continue operating

5  even through and after bankruptcy.  So plaintiff's --

6           THE COURT:  Wait, wait.  It may want to continue after

7  bankruptcy in this country?

8           MR. PHILLIPS:  Your Honor --

9           THE COURT:  I mean, there's a Canada MaxSold, but I

10  haven't heard -- are you telling me that you think there is an

11  entity here, still in this country, doing business?

12           MR. PHILLIPS:  Yes, Your Honor.  Based on the services

13  that are still available, publicly available online, yes, we do.

14      But more to the point, plaintiff is not in a position where

15  we're just going to give up on this case.  That's not something

16  that we are inclined to do, nor would we be fulfilling our

17  obligations to our client, and potentially the class, should the

18  settlement agreement fail.

19      So what we would like is a contempt order to issue for

20  somebody from MaxSold to come in and explain the situation so

21  that we could hear it from them and so that we don't have to rely

22  on secondhand information from their attorneys.  So that is the

23  impression that I want to leave the court with, which is we're

24  not just going to give up; we're not in that position.

25           THE COURT:  I don't know which one of you wants to

1    respond.  Mr. Goldberg, you look like you do.

2            MR. GOLDBERG:  Thank you.

3        Your Honor, there's a practical and pragmatic reality here.

4    The company, as far as my knowledge, no longer exists, it's no

5    longer operational, and it has no assets.  As I said, there's no

6    there there.  The irony being, quite frankly, one of the reasons

7    the company isn't there, and one of the conversations we had with

8    counsel many, many months ago, was that this lawsuit itself was

9    creating pressure on the company and its scant resources at the

10   time; nonetheless, plaintiff's counsel decided to go forward with

11   this, you know, purported class action over, you know, a

12   violation of the TCPA.

13       But leaving that aside, I understand plaintiffs may be

14   frustrated, I understand plaintiffs may want to vindicate some

15   amorphous class action considerations and concerns, but there's

16   no company there, it doesn't exist anymore.  It's indisputable

17   that the parent is in bankruptcy.  It's been wound down.  The

18   assets, such as they are, have been dispersed.  To my knowledge

19   at least, the U.S. co. is no longer functioning.

20       We have heard from Mr. McCurdy.  He's outlined today and in

21   prior papers all of the efforts he's taken in order to contact

22   someone.  I was on some of those conversations.  I sent some of

23   those e-mails.  All we hear back is:  There's no one here to

24   address your concerns to appear in court and please contact

25   bankruptcy counsel.

1    So if I were writing the script, I think we would be relieved

2  and let out of this case as soon as possible.  Plaintiff's

3  counsel can continue conversations with bankruptcy counsel in

4  Canada.  You know, if there's a trustee, they're free to speak to

5  the trustee.  They can confirm everything that we've related or

6  that's been related to us, and they can make any decisions they

7  need to as to whether or not it's worth everyone's time and

8  effort to go forward when there is no pot, shall I say, at the

9  end of the rainbow in any way, shape, matter, or form.  But those

10  conversations are best had, as Your Honor indicated, with a

11  trustee or bankruptcy counsel.  I'm not in contact --

12    THE COURT:  I'm not sure I stated that, Mr. Goldberg.

13    But go ahead, Mr. Phillips, you look like you would like to

14  answer.

15    MR. PHILLIPS:  Your Honor, defense counsel is right that

16  we're very frustrated, and I find it somewhat unincredulous {sic}

17  to believe defense counsel and all of these pronouncements that

18  he's making about his client and their financial state and what

19  their operations are when defense counsel apparently hasn't

20  talked to them in months, and he wants the court to accept as

21  true all of these statements about his client and what its

22  condition is and what its current operations are.  The best

23  person and the best people to hear from are from MaxSold, and we

24  would like Your Honor to issue a contempt order for that simple

25  reason.  Let's hear it straight from them.  Because, to date,

1    Attorney Goldberg --

2              THE COURT:  Well --

3              MR. PHILLIPS:  Go ahead.  Sorry.

4              THE COURT:  -- Mr. Phillips, I think what the court -- I

5    hear counsel, and there are an awful lot of unknowns here.  One

6    thing I glean from this, there's nobody around who is going to

7    sign that settlement agreement.  So whether that settlement is

8    viable or not, I don't know how it can be because they haven't

9    signed it, and as far as I'm concerned, probably -- well, you can

10   make the argument, Mr. Phillips, in a motion, if you want.  But

11   at least for today's purposes, trying to figure out what to do

12   today, the option of the settlement agreement seems to be sort of

13   off the table temporarily.

14      Now, Mr. Phillips, you've said something to me about the fact

15   that you seem to think there is business still ongoing in some

16   way by the company in this country.  Do you?  I mean, do you have

17   something to show the court that, in fact, this company is still

18   engaging in business?  Because if you do, that would -- and maybe

19   what you need to do, if you want to bring a motion for me to hold

20   somebody in contempt, usually it wouldn't just be a corporation,

21   it would be a person, right, or maybe a representative of a

22   corporation.  But I think if you are going to persuade the court

23   that there is a there there that can respond to a contempt order,

24   I need to hear from you some facts.  I mean, are they

25   advertising, are they making phone calls, are they conducting

1   business the way they were before?  Do you have people they've

2   called and contacted?  I need to hear that from you.  I'm not

3   going to issue a contempt order if it's a total futility.  You're

4   telling me it isn't, but you are going to have to bring a motion

5   with some support for the fact that if I issue a contempt order,

6   there will be somebody there to receive the order and convince

7   me that issuing a contempt order is worth the trouble.  That you

8   will pursue the case into the Canadian bankruptcy, I have no

9   doubt.  I don't envy you figuring out how to do that, but there

10  we know at least there is an attorney and a trustee and a court

11  proceeding that you can serve with papers.  I'm not sure there's

12  anything here you can.  I need to be convinced of that through a

13  motion.  You can't do it today, I don't think.  I don't know.

14  Maybe you can.

15          MR. PHILLIPS:  Your Honor, just to respond to the

16  immediate point about whether there are U.S. operations, at

17  MaxSold.com backslash USA, MaxSold is hosting auctions as of

18  today in the United States.  So their U.S. operations are still

19  functioning.  If Your Honor expects us to bring a motion for

20  contempt, plaintiffs will certainly do that, if that's what Your

21  Honor expects, but I have to tell you, we don't know what we

22  don't know.  We don't know who the right person is going to be.

23  We can certainly move to hold the company in contempt and for

24  them to produce a representative.  But I do, respectfully, Your

25  Honor, want to push back on this notion that Your Honor ordered

1    them to produce a representative, the company didn't, and now it

2    appears to be, well, that's that.  If the company is not going to

3    show up, then plaintiff's case is dead, and I reject that notion

4    completely.

5              THE COURT:  No.  No.  No, no, no.  I haven't been clear.

6    I agree with you that, so far, the behavior has been

7    contemptuous, but what I am not convinced of is that there's

8    anything to serve.  Now, you're telling me there's still ongoing

9    business that they're doing; Mr. Goldberg has said there isn't.

10   You know, a disputed fact between attorneys is a little unusual.

11   But I just need to hear from you, in some way, showing that there

12   is something ongoing.  What are they doing?  I mean, what is it?

13   You say they're promoting auctions.  What are they doing?

14       If you can show me there's something ongoing, I will issue a

15   contempt order, because as far as I'm concerned they're in

16   contempt.  Somebody spoke to Mr. McCurdy.  Somebody knows there's

17   this case pending.  I'm not convinced they didn't know about the

18   hearing, I'm not convinced that they didn't know that somebody

19   was supposed to show up, and I will find that out if somebody

20   ever shows up.  But I need to be convinced by you, Mr. Phillips,

21   that I'm not doing something that's totally frivolous.

22       I have two attorneys telling me that they're not conducting

23   business, that if somebody, if a Marshal or somebody, went to

24   serve an order of contempt, that nobody would be there.  I don't

25   want to do that.  I don't want to put out an order when there's

1    nobody there.

2        You're telling me there is somebody there, right?  That's all

3    I'm asking you to do.  You can call it a motion; you could call

4    it substantiation.  I would call it a motion because the motion

5    would be more formal and you would give me some support for the

6    fact that they're still in business, and that if I issue a

7    contempt order, you will be able to serve it on somebody.  That's

8    what I need to hear.

9            MR. PHILLIPS:  Absolutely, Your Honor.

10           THE COURT:  Mr. Goldberg is telling me there's nobody

11   there.

12           MR. GOLDBERG:  Your Honor, may I make a point of

13   clarification?  I want to be clear with the court and with all

14   counsel, neither I nor Mr. McCurdy have any firsthand knowledge

15   as to what operations, if any, are ongoing with respect to the

16   defendant, MaxSold.

17       Our information is obtained from the prior individual who was

18   associated with the company, who left some time ago, and our more

19   recent efforts to obtain information when we spoke to the

20   gentleman Mr. McCurdy alluded to, who conveyed to us that there

21   was no there there, that the company has no officers, you know,

22   no one there is running the company.  And our information is

23   obtained from that source.  So I don't want there to be any

24   misconception that either of us has any firsthand or personal

25   knowledge separate from that that was gleaned from the gentleman

1   that we both spoke to and Mr. McCurdy has more recently been

2   attempting to contact via e-mail and otherwise.

3          MR. McCURDY:  Your Honor, may I be heard on a further

4   point of clarification?

5          THE COURT:  Sure, sure.

6          MR. McCURDY:  When we filed the corporate disclosure

7   statement in this case, that statement indicated that our client,

8   MaxSold Inc., is a U.S. subsidiary of a Canadian company called

9   "MaxSold Incorporated."

10      When I spoke with the bankruptcy trustee, I was told that the

11  trustee had authority over the Canadian entity and not direct

12  authority over the American entity.  That person also told me

13  that his understanding was that the American entity was an asset

14  of the Canadian entity.  He could not recall -- and, I mean, our

15  time window was short, so I don't know whether he was in a

16  position to look at records to verify.  He could not recall

17  whether the American entity was a part of the sale transaction

18  that he referred to.

19      If you go to a website, MaxSold.com, that website is live, it

20  contains a phone number that I called, and somebody answers that

21  line.  If you look at the Delaware corporation records, those

22  records will show that there is an entity called "MaxSold Inc.,"

23  that it's a domestic Delaware corporation, that its status is

24  delinquent, and that its last annual report was filed in May of

25  '22.

1       As to whether the U.S. entity, MaxSold Inc., has live

2   operations, you know, that is an inference that would have to be

3   drawn from the facts just set out.

4       THE COURT:  Mr. Phillips, the burden is on you to

5   convince this court that there would be some value in serving a

6   contempt order and that there is someone to serve it on.  And I

7   don't mean on the attorneys because, obviously, that's not going

8   to get us anywhere.

9       So what I'm hearing from defense counsel, just to be clear,

10  is that there is a Canadian corporation that is currently in

11  bankruptcy.  Mr. McCurdy, you may not have meant to be ambiguous

12  on what you had just said, but I heard two things.  I heard you

13  say that the Canadian corporation was separate from the American

14  corporation and then you said that the trustee told you that the

15  American corporation is an asset of the Canadian corporation.

16  Now, to me, those are contradictory statements.  I don't know

17  what it means to have no control over the corporation and have it

18  be an asset of the corporation.  You know, if you put those two

19  sentences side by side, they don't make any sense, right?  I

20  mean, you agree with me, they don't.

21      I think we don't know.  And the court is saying to

22  Mr. Phillips, Mr. McCurdy and Mr. Goldberg have both indicated

23  that they have done everything they can think of to get somebody

24  here today and they couldn't.  You're telling me that the

25  American corporation is still active, it's still conducting

1    business.  Show me that and I'll issue your contempt order.  But

2    I'm not going to issue a contempt order for something that is not

3    here or a contempt order for the wrong party.  If I'm issuing a

4    contempt order for a U.S. corporation that is no longer

5    functioning when I should -- not only that, you've got to

6    convince me, can I issue a contempt order for a Canadian

7    corporation?  I don't know about that.  I mean, I really don't

8    know whether they would honor -- you know, this may be more

9    complicated than any of us are thinking.

10        You have indicated, Mr. Phillips, you are going to pursue

11   this case against some defendant or other.  If you want the court

12   to take some action against this corporation who's a defendant in

13   my case, you've got to show me that it's still viable.  I have

14   heard that it's been sold; I have heard that it's been closed

15   down.  You're telling me it's still operating.  It's your move.

16        For the time being, I'm denying the motion to withdraw just

17   because I need someone to talk to after Mr. Phillips comes up

18   with what he's coming up with.  That doesn't mean I won't be

19   granting it in the future.  Don't despair, counsel.  You're not

20   going to be stuck with this case forever.

21        We have already simplified things about the settlement,

22   namely that I do not expect you to find somebody to sign the

23   settlement.  The settlement is going to have to stand or fall on

24   the procedure that has taken place already.  Either it's a -- you

25   are going to argue to me, I think, Mr. Phillips, you have

1  indicated, that it's a valid settlement even without the

2  signature.  That's where you are.  No signature.  If the

3  settlement is valid, it has to be valid without a signature.  We

4  all know that signature is not happening.

5      So that's the court's rulings for now.

6      I guess for you, Mr. McCurdy, Mr. Goldberg, there's very

7  little to do until you get something from Mr. Phillips, and we

8  will take it from there, okay?

9      Okay.  Counsel, court will be adjourned.

10          MR. PHILLIPS:  Thank you, Your Honor.

11          MR. McCURDY:  Thank you, Your Honor.

12              (Adjourned.)

13

14

15              C E R T I F I C A T E

16

17      I, Nickoline M. Drury, RMR, CRR, Court Reporter for the

18  United States District Court in the Western District of

19  Washington at Seattle, do certify that the foregoing is a correct

20  transcript, to the best of my ability, from the record of

21  proceedings in the above-entitled matter.

22

23              /s/ Nickoline Drury

24              Nickoline Drury

25