The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| VANESSA VANDERBRUG, as Administrator of Estate of Kay Anne Vanderbrug and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MAXSOLD INC.<br><br>and<br><br>1000822913 US INC.,<br><br>Defendants. | Case No. 2:22-cv-1707 BJR<br><br>DEFENDANT 1000822913 US INC.'S MOTION FOR SUMMARY JUDGMENT |

## I. INTRODUCTION & RELIEF REQUESTED

Plaintiff Vanessa Vanderbrug's (hereinafter "Plaintiff") claims against Defendant 1000822913 US INC. ("US Inc.") rest entirely on a successor-liability theory. The undisputed record before this Court forecloses upon that theory as a matter of law. US Inc. did not acquire Defendant MaxSold Inc.'s ("MaxSold") assets or liabilities, nor did it merge or consolidate with MasSold. US Inc. operates under a license granted by a Canadian purchaser, 1000822913 Ontario Inc., which acquired assets of MaxSold in a Canadian court-approved sale free and clear of liabilities. As such, US Inc. respectfully moves this Court for an order of summary judgment against Plaintiff Kay Anne Vanderbrug ("Plaintiff").

DEFENDANT 1000822913 US INC.'S MOTION FOR SUMMARY JUDGMENT - 1
(CASE NO. 2:22-CV-1707 BJR)

Miller Nash LLP
605 5th Ave S, Suite 900
Seattle WA 98104
206.624.8300 | Fax: 206.340.9599

## II. FACTS

**A.    PROCEDURAL BACKGROUND**

On December 2, 2022, Plaintiff Kay Anne Vanderbrug (hereinafter, "Decedent") filed a class action complaint against Defendant MaxSold Inc. for violation of the Telephone Consumer Protection Act ("TCPA") arising out of alleged telemarketing calls conducted by MaxSold. During the litigation, the parties ostensibly agreed to a settlement which was never signed by MaxSold. On February 15, 2024, MaxSold's parent company initiated a bankruptcy proceeding by filing a Notice of Intention ("NOI") in the Superior Court of Justice (In Bankruptcy and Insolvency) for Ontario, Canada ("Bankruptcy Court"). The Bankruptcy Court approved a Sale and Investment Solicitation Process ("SISP") on March 14, 2024; then, on April 25, 2024, the Bankruptcy Court approved the sale of MaxSold's assets to 1000822913 Ontario, Inc. More than six months later, on October 28, 2024, Decedent amended her class action complaint alleging US Inc. was a successor to MaxSold's liabilities. Now, Plaintiff seeks to enforce the unexecuted settlement agreement, or in the alternative, litigate the class action claims.

**B.    FACTUAL BACKGROUND**

MaxSold provided online auction services for large volume content sales across Canada and the United States. In 2022, MaxSold started having cash flow difficulties due to a slower housing market and increasing acquisition costs. MaxSold attempted to restructure their operations and modernize their technology to decrease operating costs and enhance the company. Despite these efforts, historical debt, legacy contracts and increasing capital requirements continued to place significant financial pressure on the company. As a result, in February 2024, MaxSold began the process of selling the company or seeking investors. During this period, MaxSold could not make its loan payment to the National Bank of Canada ("NBC"), a secured lender for an approximately $3.1 Million CDN loan. NBC demanded and issued a Notice of

MOTION FOR SUMMARY JUDGMENT - 2
(CASE NO. 2:22-CV-1707 BJR)

Miller Nash LLP
605 5th Ave S, Suite 900
Seattle WA 98104
206.624.8300 | Fax: 206.340.9599

Intention to Enforce Security under Canada's Bankruptcy and Insolvency Act.[1]

On February 15, 2024, MaxSold filed its NOI and appointed Dodick Landau Inc. ("DLI") as its Proposal Trustee in the Bankruptcy Court.[2] The NOI permitted MaxSold to solicit potential buyers and investors while continuing operations and avoiding liquidation. DLI submitted a Sale and Investment Solicitation Process ("SISP") to the Bankruptcy Court, which it reviewed and granted on March 14, 2024.[3] As part of the SISP process, 1000822913 Ontario, Inc. submitted a Stalking Horse Purchase Agreement.[4] The proposed purchased price of $750,000 CDN included only the assets of MaxSold. At the time of the bankruptcy, MaxSold had approximately $4.1 million CDN in liabilities, which consisted of the $3.1 million CDN secured loan from NBC.[5] 1000822913 Ontario, Inc. was an independent, third-party bona fide purchaser. The only related party between the purchaser and MaxSold was Sath Dosanjh who owns a 1.73% interest in 1000822913 Ontario, Inc. DLI reviewed all the bids and determined the only viable bid was the Stalking Horse bid. On April 22, 2024, DLI sought approval of the sale of MaxSold's assets to 1000822913 Ontario, Inc. which also owns US Inc. On April 25, 2024, the Bankruptcy Court entered an Order approving the sale of MaxSold's assets to 1000822913 Ontario, Inc. The Court's Order, in pertinent part, states:

> APPROVAL AND VESTING
>
> 2. THIS COURT ORDERS AND DECLARES that the Transaction is hereby approved, and the execution of the APA by the Vendor is hereby authorized and approved, with such minor amendments as the Vendor and Purchaser, in consultation with the Proposal Trustee, may deem necessary. The Vendor is hereby authorized and directed to take such additional steps and execute such additional documents as may be necessary or desirable for the completion of the Transaction and for the conveyance of the Purchased Assets to the Purchaser.

---

[1] Attached as Ex. 1 to the Declaration of Ashley Langley ("Langley Decl.") is a true and correct copy of the MaxSold Motion re: Stay Extension, Approval of a Sale Process, Tab 1, Bates No. US Inc 000196, paras. 12-14.
[2] Ontario Superior Court of Justice (In Bankruptcy and Insolvency), Bankruptcy Court File No. BK-24-03044331-0033 Estate No. 33-044331.
[3] Langley Decl., at Ex. 2.
[4] Langley Decl., at Ex. 3.
[5] Langley Decl., at Ex. 4.

MOTION FOR SUMMARY JUDGMENT - 3
(CASE NO. 2:22-CV-1707 BJR)

Miller Nash LLP
605 5th Ave S, Suite 900
Seattle WA 98104
206.624.8300 | Fax: 206.340.9599

3. THIS COURT ORDERS AND DECLARES that this Order shall constitute the only authorization required by the Vendor and Proposal Trustee to proceed with the Transaction and that no shareholder, partner, or other approvals shall be required in connection therewith.

4. THIS COURT ORDERS AND DECLARES that upon the delivery of a Proposal Trustee's certificate to the Purchaser substantially in the form attached as Schedule "A" hereto (the "Proposal Trustee's Certificate"), all of the Vendor's right, title and interest in and to the Purchased Assets described in the APA shall vest absolutely in the Purchaser, free and clear of and from any and all security interests (whether contractual, statutory, or otherwise), hypothecs, mortgages, trusts or deemed trusts (whether contractual, statutory, or otherwise), liens, executions, levies, charges, or other financial or monetary claims, whether or not they have attached or been perfected, registered or filed and whether secured, unsecured or otherwise (collectively, the "Claims") including, without limiting the generality of the foregoing: (i) any encumbrances or charges created by the Order of the Honourable Justice Kershman dated March 14, 2024; and (ii) all charges, security interests or claims evidenced by registrations pursuant to the Personal Property Security Act (Ontario) or any other personal property registry system (all of which are collectively referred to as the "Encumbrances") and, for greater certainty, this Court orders that all of the Encumbrances affecting or relating to the Purchased Assets are hereby expunged and discharged as against the Purchased Assets.

Additionally, the Court Ordered:

13. THIS COURT HEREBY REQUESTS the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in the United States to give effect to this Order and to assist the Proposal Trustee and its agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Proposal Trustee, as an officer of this Court, as may be necessary or desirable to give effect to this Order or to assist the Proposal Trustee and its agents in carrying out the terms of this Order.[6]

US Inc. did not purchase any assets from MaxSold.[7] 1000822913 Ontario Inc., alone, acquired assets from MaxSold through the court-approved process.[8] 1000822913 Ontario owns all intellectual property ("IP") related to the business—including maxsold.com, supporting

---

[6] Langley Decl., at Ex. 5.
[7] *Id*. *See, also*, Langley Decl., at Ex. 6.
[8] *Id*. *See, also*, Langley Decl., at Ex. 7.

MOTION FOR SUMMARY JUDGMENT - 4
(CASE NO. 2:22-CV-1707 BJR)

Miller Nash LLP
605 5th Ave S, Suite 900
Seattle WA 98104
206.624.8300 | Fax: 206.340.9599

technology, and the MaxSold trade name in Canada and the United States—and licenses those rights to US Inc. As such, US Inc. must operate under the terms and conditions set by 1000822913 US Inc. In other words, US Inc.'s right to operate as "MaxSold" is dictated by its licensing agreement with 1000822913 Ontario Inc.

### III.  ISSUES PRESENTED

Whether US Inc. can be held liable for MaxSold's alleged TCPA violations where (i) MaxSold's assets were sold in a Canadian court-approved bankruptcy process to 1000822913 Ontario Inc. "free and clear of all Claims and Encumbrances," with pre-closing liabilities expressly excluded, and (ii) US Inc. operates in the United States pursuant to a license from 1000822913 Ontario Inc., rather than as a continuation or assignee of MaxSold's liabilities.

### IV.  EVIDENCE RELIED UPON

US Inc. relies upon the records and files of the Bankruptcy Court, the records and filings herein, along with the supporting declaration of Ashley Langley ("Langley Decl."), with exhibit(s) attached thereto, in support this motion.

### V.  AUTHORITY

**A.  LEGAL STANDARD**

Summary judgment is appropriate where there is no genuine dispute of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

**B.  U.S. BANKRUPTCY LAW ON SUCCESSOR LIABILITY**

Under section 363 of the U.S. Bankruptcy Code, a debtor-in-possession in a chapter 11 bankruptcy proceeding can seek court approval to sell some or all the debtor's assets, free and clear of all claims and encumbrances.[9] This process is beneficial for debtors because it allows for a more streamlined method of liquidating its assets. It is also beneficial to creditors to ensure the assets are sold for a reasonable price. Finally, it is beneficial to purchasers who can obtain assets, typically at a discount, without fear they will later be clawed back or otherwise diminish in value

---

[9] 11 U.S.C. § 363.

MOTION FOR SUMMARY JUDGMENT - 5
(CASE NO. 2:22-CV-1707 BJR)

Miller Nash LLP
605 5th Ave S, Suite 900
Seattle WA 98104
206.624.8300 | Fax: 206.340.9599

as a result of any liens or other encumbrances.

The section 363 sale process is a public auction. The debtor must market the assets and sell them through a court-approved auction process. Typically, the debtor will initially file a motion for approval of "bidding procedures" which will govern the process for the sale. Once approved, the debtor will market the assets to potential purchasers. This process can be done by the debtor itself, or through a marketing or investment banking professional/firm. If a marketing professional is utilized, their employment will have to be approved by the bankruptcy court.

Often in section 363 sales, there will be an initial "stalking horse" bidder that will perform the initial due diligence on the assets to be sold and enter into an asset purchase agreement with the debtor for the sale of the property, subject to the possibility of higher and better offers being accepted at the auction. The benefit of being a stalking horse bidder is that this bidder typically can set the initial value of the assets and is often granted certain "bid protections" in the event they are out-bid, including a break-up fee and/or expense reimbursement. The stalking horse bidder can also negotiate for minimum overbid amounts for the auction.

Once the bid procedures are approved by the bankruptcy court and the marketing period has closed, any potential bidders that have satisfied the bid procedures and have met the criteria to be designated as qualified bidders will be able to participate in the auction. Upon conclusion of the auction, a winning bidder, and typically a back-up bidder, will be identified. At that time, the debtor and the buyer will need to obtain court approval of the sale through a sale confirmation hearing and order. Typically, the sale will be approved unless there was a problem with the auction process not conforming to the approved procedures.

Upon entry of a confirmation order by the court, the buyer and debtor will have to execute a final purchase agreement and the sale transaction will be closed. This process typically takes 30-60 days from the approval of the bid procedures to entry of the sale confirmation order.

Under U.S. bankruptcy law, claimants cannot pursue successor liability against a

MOTION FOR SUMMARY JUDGMENT - 6
(CASE NO. 2:22-CV-1707 BJR)

Miller Nash LLP
605 5th Ave S, Suite 900
Seattle WA 98104
206.624.8300 | Fax: 206.340.9599

purchaser in a bankruptcy sale because most sales are "free and clear" of such claims.[10] Assets sold in bankruptcy are "free and clear" of interests in the assets, including liens, claims and encumbrances.[11] To be "free and clear," the sale must meet **one of the following conditions:**

 1. Nonbankruptcy law permits the sale, "free and clear" of such interest;
 2. The holder(s) of such interest consent(s);
 3. The sale price exceeds the value of all liens on the property;
 4. Such interest is a *bona fide* dispute; and/or
 5. The holder(s) of such interest could be compelled to accept a money satisfaction of such interest.[12]

In this instance, the "interest" is the settlement agreement entered into between MaxSold and the plaintiffs (the Class Action plaintiffs). There was no legal restriction preventing MaxSold from being sold "free and clear" of the judgment.

C.  **CANADIAN BANKRUPTCY PROCESS AND SUCCESSOR LIABILITY**

The bankruptcy process in Canada is almost identical to the U.S. process apart from the Notice of Intention to Make a Proposal to sell assets. Generally, once bankruptcy is filed, all creditor proceedings against the debtor are stayed, an insolvency trustee is appointed, assets and debts are marshalled, and assets are disposed of to pay debts owed to creditors, all with the approval of the bankruptcy court.

MaxSold submitted a NOI and Appointment of a Proposal Trustee with the bankruptcy court in Ontario, Canada on February 15, 2024. The trustee then marshalled all MaxSold's assets and debts, developed a Sale and Investment Solicitation Process plan, with input from creditors and the debtor to dispose of the assets so debts could be paid off and presented the plan to the Court. The plan included a bid process to potential buyers of the assets. 1000822913 Ontario Inc. submitted a bid and the Stalking Horse Asset Purchase Agreement to purchase MaxSold's assets.

---

[10] 11 U.S.C. § 363(f).
[11] *Id.*
[12] *Id.*

MOTION FOR SUMMARY JUDGMENT - 7
(CASE NO. 2:22-CV-1707 BJR)

Miller Nash LLP
605 5th Ave S, Suite 900
Seattle WA 98104
206.624.8300 | Fax: 206.340.9599

No other qualified bids were received; therefore, the Proposal Trustee filed an application to the Court for orders approving the successful bid and authorizing the transaction to be completed. The Court, after reviewing the application, approved 1000822913 Ontario Inc.'s bid which included the sale of MaxSold's assets to Defendant, 1000822913 US INC. free and clear of any liabilities.

**D.    EVEN DISREGARDING BANKRUPTCY LAW, THERE IS NO SUCCESSOR LIABILITY**

An entity purchasing only the assets of another corporation does not, in purchasing the assets, become liable for the debts of the selling corporation. The reason for the protection of corporate asset sales from successor liability is "a sale of corporate assets transfers an interest separate from the corporate entity and does not result in a transfer of unbargained for liabilities from the seller to the purchaser."[13]

There are four narrow exceptions[14] which include:

(1) the purchaser expressly or impliedly agrees to assume liability;

(2) the purchaser is a de facto merger or consolidation;

(3) the purchaser is a mere continuation of the seller, or

(4) the transfer of assets is for the fraudulent purpose of escaping liability.[15]

These four exceptions serve to "protect the rights of commercial creditors and dissenting shareholders following corporate acquisitions."[16]

Examining the relationship between the purchaser and the seller is paramount to determining whether the transfer of assets falls within any of the exceptions. Here, Plaintiff proceeds against US Inc. solely on a claim of successor liability; however, the undisputed facts negate each of the above exceptions.

---

[13] *Hall v. Armstrong Cork*, 103 Wn.2d 258, 262, 692 P.2d 787 (1984).
[14] *Martin v. Abbott Labs*, 102 Wn.2d 581, 689 P.2d 368 (1984).
[15] *Id*, citing *Meisel v. M & N Modern Hydraulic Press Co.*, 97 Wn. 2d 403, 405, 645 P.2d 689 (1982); *Cashar v. Redford*, 28 Wn.App. 394, 396, 624 P.2d 194 (1981).
[16] *Hall, supra* citing *Martin v. Abbott Labs*, 102 Wn.2d at 609.

MOTION FOR SUMMARY JUDGMENT - 8
(CASE NO. 2:22-CV-1707 BJR)

Miller Nash LLP
605 5th Ave S, Suite 900
Seattle WA 98104
206.624.8300 | Fax: 206.340.9599

1.  <u>No Assumption of Liabilities</u>

The Canadian court-approved asset sale provided that the purchaser, *i.e.*, 1000822913 Ontario Inc., take the assets free and clear of claims and without assuming liabilities excepted limited Assumed Obligations. US Inc. did not acquire assets from MaxSold or assume its liabilities. The Canadian seller owned the IP, which transferred to 1000822913 Ontario Inc. without liabilities; no payment was due to MaxSold for those rights, and US Inc. did not assume all assets.

2.  <u>No De Facto Merger or Consolidation</u>

There is no merger or consolidation between MaxSold Inc. and US Inc. US Inc. did not purchase MaxSold Inc.'s assets nor did it take on its liabilities. Instead, US Inc. operates pursuant to a license from a separate owning entity, *i.e.*, 1000822913 Ontario Inc., which acquired assets through a court-approved process.

3.  <u>No "Mere Continuation"</u>

A "mere continuation" requires continuity of officers, directors, and ownership. US Inc. and 1000822913 Ontario Inc. do not share the same officers and directors, and US Inc. rejected any conflation with MaxSold Inc. The record further reflects the lack of operational continuity such as control over the website residing with 1000822913 Ontario Inc.

4.  <u>No Fraudulent Transfer to Escape Liability</u>

The asset sale was conducted through a Canadian court-approved SISP, culminating in a free-and-clear vesting contemplated by the Approval and Vesting Order; Plaintiff's insinuations about intent are refuted by the process and structure of the transaction. The existence of a secured lender with priority rights and insufficiency of U.S. assets further underscores the bona fide nature of the transaction. The bankruptcy court process proceeded in accordance with Canada's Bankruptcy and Insolvency Act. 1000822913 Ontario, Inc.—US Inc.'s parent company—bid to purchase MaxSold's assets in the bankruptcy proceeding. The Proposal Trustee submitted the bid to the bankruptcy court. The bankruptcy court approved the purchase of

MOTION FOR SUMMARY JUDGMENT - 9
(CASE NO. 2:22-CV-1707 BJR)

Miller Nash LLP
605 5th Ave S, Suite 900
Seattle WA 98104
206.624.8300 | Fax: 206.340.9599

MaxSold's assets from MaxSold's bankruptcy estate.[17] Thus, MaxSold's assets were not transferred directly to US Inc. Moreover, the Bankruptcy Court ordered the sale of the assets specifically exempting the purchaser from any prior claims, judgments, liens or liabilities attached to the assets or incurred by the debtor, MaxSold. No facts exist to support any of the four narrow exceptions which could result in successor liability for US Inc.

## VI. CONCLUSION

Plaintiff's TCPA claim targets conduct of MaxSold and seeks to extend liability to US Inc. solely on a successor theory. US Inc. is a distinct Delaware entity registered in Washington; it is not a successor to MaxSold. The undisputed record demonstrates that US Inc. did not acquire MaxSold Inc.'s assets or liabilities and operates solely under a license from a separate Canadian purchaser that acquired assets of MaxSold through a court-approved, free-and-clear process. Without a viable successor-liability theory, Plaintiff's claims against US Inc. fail as a matter of law. Based on the foregoing, US Inc. respectfully requests that the Court grant summary judgment in its favor on all claims and dismiss it from this action with prejudice.

Respectfully submitted this 31st day of October, 2025.

MILLER NASH LLP

/s/ J. Dino Vasquez
J. Dino Vasquez, WSBA No. 25533

/s/ Ashley M. Langley
Ashley M. Langley, WSBA No. 54032

605 5th Ave. S., Ste. 900
Seattle, WA 98104
Telephone: 206.624.8300
Fax: 206.340.9599
dino.vasquez@millernash.com
ashley.langley@millernash.com

**Attorney for Defendant 1000822913 US Inc.**

---

[17] See Ex. 5 to the Langley Decl.

MOTION FOR SUMMARY JUDGMENT - 10
(CASE NO. 2:22-CV-1707 BJR)

Miller Nash LLP
605 5th Ave S, Suite 900
Seattle WA 98104
206.624.8300 | Fax: 206.340.9599

**DECLARATION OF SERVICE**

I, Semee I. Yim, hereby declare under penalty of perjury under the laws of the United States that the foregoing document was filed with the Clerk of the Court via the CM/ECF filing system, which will send notification to all registered users. A true and correct copy was sent via US First Class mail to the following:

*I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.*

EXECUTED in Seattle, Washington on this 31st day of October, 2025.

/s/Semee I. Yim
Semee I. Yim, Legal Assistant
Semee.Yim@millernash.com

DEFENDANT 1000822913 US INC.'S MOTION FOR SUMMARY JUDGMENT - 11
(CASE NO. 2:22-CV-1707 BJR)

Miller Nash LLP
605 5th Ave S, Suite 900
Seattle WA 98104
206.624.8300 | Fax: 206.340.9599