— **EXHIBIT C** —



Chris Reid <chris@theamazingreids.com>

## USCo

**Sath Dosanjh** <sath.dosanjh@maxsold.com>                                    Mon, Mar 18, 2024 at 10:18 AM
To: Chris Reid <chris@reids.co>
Cc: Russ Patterson <russ.patterson@maxsold.com>

> Hi Chris,
> The primary assets to my knowledge (and have confirmed with the previous CFO) are:
> 1. the US Seller contracts. Note, Sellers sign a new contract for each auction. At the Close date of this sales process, there should only be a handful of Seller contracts with MaxSold that haven't closed their auctions, which will need to be re-signed with NewCo.
> 2. US Auction licenses. We are looking into whether a Can entity can hold these licenses or a US entity is required.
>
> Sath

> On Sat, Mar 16, 2024 at 8:58 PM Chris Reid <chris@reids.co> wrote:
>> Russ it's pretty reliable to say I don't see any reason to purchase the shares of us co at this point but the only assets that have been described to me are the auction license and setups for state filing requirements.
>>
>> within the context that I don't see the need to acquire us co it's best for the company to decide how best to proceed,
>>
>> But stepping back can we get more granular on what assets are in us co. Eg I want to ensure that when buyers / sellers sign up they're contracting with can co?  +Sath Dosanjh on this one as well -> do we have a break down of assets in us co anywhere?
>>
>> On Fri, Mar 15, 2024 at 10:58 AM Russ Patterson <russ.patterson@maxsold.com> wrote:
>>> I left out something. Per Rahn: "One consideration is that so far the SHB is buying the shares of USCo, as such, by signing the agreement, you are binding him to it as possible owner of those shares."
>>>
>>> Moot point unless you decide to acquire those shares. Doesn't sound like that is going to happen.
>>>
>>> Russ
>>>
>>> **From:** Russ Patterson <russ.patterson@maxsold.com>
>>> **Sent:** Friday, March 15, 2024 10:20 AM
>>> **To:** 'Chris Reid' <chris@reids.co>
>>> **Subject:** RE: USCo
>>>
>>> Do you have a perspective re me signing a class action settlement agreement during this sales period?
>>>
>>> Rahn's answer is to let the owner decide later, but we don't have that kind of time. We have already delayed and dragged this along as much as we can. He suggested I ask for your POV.

US INC_000020

The way I see it, signing the agreement is not a decision, it's just preserving optionality. If we don't sign, we lose the option to make the first payment, the settlement vapourizes, and the plaintiff can still in theory try to pursue what they believe can be a large class action. If we do sign, we can still decide to make the first payment or not.

While the class action *may* be left behind in the old USCo, it's better to leave a settlement in dispute than to leave the entire class action in dispute, since it changes the risk/reward for opposing counsel to try to chase the liability to the new Canadian company or the new US company.

Also, since the first payment is due on April 15th, if we can convince Rahn that this is strategically important to ensure the matter is left behind (as our US insolvency guy believes), then the bank is the one making the payment that makes sure this pain in the ass never comes back.

Subject to our Canadian insolvency counsel's POV, it seems to me that signing the agreement and making the first payment gains extra security for the company and the acquirer, and due to a schedule set by the plaintiff and mediator, happens to fall on a date where that payment ends up being at NBC's expense. I would think you'd be in favour or at most indifferent to that?

We could then dig into the mechanics of who is responsible for a payment that falls on the closing date. If it's you, then you can decide when we get there. If it's the bank, then Rahn gets to decide.

Cheers

. Russ

---

**From:** Russ Patterson <russ.patterson@maxsold.com>
**Sent:** Thursday, March 14, 2024 4:24 PM
**To:** 'Chris Reid' <chris@reids.co>
**Subject:** RE: USCo

Sath will have a better idea, but I think April does this manually through custom spreadsheets. I was just looking at Taxjar this morning.

On the USCo, the final class action suit settlement is now in my hands for signature. Pending approval from Trustee and lawyers, I will sign it, and we will try to make the first payment out of the pre-purchase funds assuming I can get the trustee to approve. Due date is April 15, by total coincidence.

When the first payment is made, we get a release against USCo, CanCo, and directors and officers. From that point, I think we can abandon it. By signing the deal and making that first payment, we ensure that the opposing counsel can now only attempt to chase the liability across to the Canadian entity or to

a new US entity to get the rest of the settled amount, they can't chase us for the full potential of the class action lawsuit. Our US GCs believe that it is quite possible for a determined and clever legal team to chase CanCo or new USCo, but for $200k or so, there is pretty much zero chance opposing counsel will bother. This is a nice tidy situation for the acquirer. Can freely set up a new USCo, or not, and leave the settlement behind either way.

R

---

**From:** Chris Reid <chris@reids.co>
**Sent:** Thursday, March 14, 2024 3:03 PM
**To:** Russ Patterson <russ.patterson@maxsold.com>
**Subject:** Re: USCo

Yes we'll need to setup sales tax reporting, but I think the complexity is less than that of dealing with the existing usco. For the money we can get a lot done.

Are you guys using avalara, taxjar, vertex, etc to do tax determination on the fly? With 300 or so auctions per month we can do all this manually including remittance but likely we push to a fully automated solution.

On Wed, Mar 13, 2024 at 10:36 PM Russ Patterson <russ.patterson@maxsold.com> wrote:

> There's another potential issue we had not considered: sales taxes. I am not sure how we will collect and remit all the state and municipal sales taxes without a US operating company.
>
> We may need that USCo yet. I suggested to Rahn that I engage our US GC to look into options but he sees it as buyers legal expense.
>
> **Russ Patterson**
> President & CEO, MaxSold
> russ.patterson@maxsold.com
>
> 1-905-302-7236
>
> https://maxsold.com
>
> On Wed, Mar 13, 2024 at 10:25 PM Chris Reid <chris@reids.co> wrote:
>
>> Thank Russ,
>>
>> Yes lots of transition planning to work through now, I'm starting some transition tracking check lists, I'm sure you guys will be doing the same. glad to see everyone agrees the burden in the us co isn't worth the cost.

Chris

On Tue, Mar 12, 2024 at 3:47 PM Russ Patterson <russ.patterson@maxsold.com> wrote:

> Hi Chris
>
> I had an opportunity to discuss the USCo situation further with our insolvency counsel.
>
> The news is good. Assuming you don't acquire the USCo, if we were to abandon it in the way you suggested, it would be a zombie company attached to a Canadian shell that will be bankrupted later on as part of the orderly process Rahn has laid out to ensure the liabilities are left behind. She is of the opinion that the US class action and any other claims would have no path forward. If that proves correct, then we won't need to spend money to get a recognition order.
>
> To prepare for a scenario like that, we can prepare contracts for our two US-based FTE's, get an agreement in place with a US employer service to hold the part time contracts, and start conversations with the dude who holds the auction licenses.
>
> While we can't yet know who will eventually end up owning the company, I don't see a scenario where the USCo will be acquired by the purchaser. Either the purchaser will want to operate in the US and already have their own company to take on employee agreements and licenses, or they will want to work in the US on the basis you have in mind, leaving a heap of debt behind, or they will not want to operate in the US. Assuming this latest legal advice is correct, I can't think of a scenario where a new owner would want to keep the USCo, or where I would recommend that they do so.
>
> **Russ Patterson**
> President & CEO, MaxSold
> russ.patterson@maxsold.com
>
> 1-905-302-7236
>
> https://maxsold.com