1

2

3

4

5

6

7

8

The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

9

10

11

12

13

14

15

16

17

VANESSA VANDERBRUG, as Administrator
of the Estate of Kay Anne Vanderbrug and on
behalf of all others similarly situated,

Plaintiff,

v.

MAXSOLD INC.

and

1000822913 US INC.,

Defendants.

Case No. 2:22-cv-1707 BJR

DEFENDANT'S REPLY IN SUPPORT
OF DEFENDANT 1000822913 US INC.'S
MOTION FOR SUMMARY JUDGMENT

18   Defendant 1000822913 US INC. ("Defendant") replies as follows to Plaintiff's

19   Memorandum in Opposition to Defendant's Motion for Summary Judgment. Plaintiff provides

20   no evidence to show Defendant acquired Defendant MaxSold Inc.'s (U.S. MaxSold) assets or

21   liabilities, or that it merged or consolidated with U.S. MaxSold. There are no genuine issues of

22   material fact. Summary judgment should be granted.

23                    I.      **SUPPLEMENTAL STATEMENT OF FACTS.**

24   Plaintiff alleges Defendant is misconstruing the entity names. For clarity, Defendant

25   defines them as follows: the original, pre-bankruptcy entities are Canadian MaxSold, the parent

26   company and U.S. MaxSold, the U.S. subsidiary. The post-bankruptcy entity which purchased

**Miller Nash LLP**
605 5th Ave S, Ste 900
Seattle, WA 98104
206.624.8300

MaxSold out of bankruptcy is 1000822913 Ontario Inc. ("Ontario Inc."), a Canadian entity. "Defendant" 1000822913 U.S. Inc. is an entity created which has a license to allow U.S. users access to the "Auction Platform," one of the assets the Canadian entity purchased out of bankruptcy.

Plaintiff references its Exhibit I as proof that Canadian MaxSold filed for bankruptcy in April 2024, alleging that Defendant intended to defraud Ms. Vanderbrug. Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Dkt. No. 83, page 29). This assertion is false and the offered evidence was the "Assignment, Approval, and Vesting Order," which was issued by the court after Canadian MaxSold's bankruptcy filing which occurred in February 2024. Exhibit I to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Dkt. No. 83, page 30).

## II.    ARGUMENT

A.  Defendant is Entitled to Summary Judgment Pursuant to CR 56.

CR 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Summary judgment is only proper when the non-moving party comes forward with evidence sufficient to establish the existence of each element of that party's case.[1] Plaintiff cannot rely on mere allegations or denials, conclusory statements, legal conclusions, speculation, or hearsay to defeat summary judgment.[2]

In this case, Plaintiff has put forth no evidence showing Defendant acquired any assets from U.S. MaxSold. Defendant only operates through a license from 1000822913 Ontario Inc.; Defendant is not a "mere continuation" of U.S. MaxSold; and there has not been "substantial

---

[1] Howard v. Spokane Inland Empire Blood Bank, 117 Wn.2d 619, 625 (1991).
[2] See CR 56(e); White v. State, 131 Wn.2d 1, 9 (1997); Seven Gables Corp. v. MGM/UA Entertainment Co., 106 Wn.2d 1, 13 (1986).

DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT 1000822913 US
INC.'S MOTION FOR SUMMARY JUDGMENT – 2
2:22-CV-1707 BJR

1    continuity" between U.S. MaxSold and Defendant.

2    B.    There was no fraudulent transfer of assets; 1000822913 Ontario Inc. owns the rights to all

3          assets.

4          Plaintiff claims Defendant is liable under the "fraudulent transfer theory" of successor

5    liability because they acquired the assets of U.S. MaxSold without paying any consideration.

6    Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Dkt. No.

7    82, page 13-14).  Plaintiff's claim is flawed however, because Defendant did not purchase any

8    assets from U.S. MaxSold; Defendant operates as "MaxSold" under license from 1000822913

9    Ontario Inc.[3]

10         This case is analogous to *Northgate Ventures LLC v. Geoffrey H. Garrett PLLC*, where

11   the Plaintiff was not able to establish the "fraudulent transfer" theory because there was no

12   transfer of assets. 10 Wn. App. 2d 850, 863, 450 P.3d 1210, 1218 (2019). There cannot be a

13   fraudulent transfer unless there is a transfer of assets. *Id.*

14         Plaintiff further claims Defendant is liable under the "fraudulent transfer theory" because

15   they committed "fraud or actions otherwise lacking good faith" by engaging in a "series of

16   actions to abandon the settlement agreement." Plaintiff's Memorandum in Opposition to

17   Defendant's Motion for Summary Judgment (Dkt. No. 82, page 15). In this case, however, the

18   parties never finalized a settlement agreement. Plaintiff mischaracterizes emails discussing

19   business contingency planning as evidence of fraud.

20         Further, the U.S. MaxSold CEO eventually acknowledged his strategizing was a "moot

21   point" because the Purchaser had no intent to acquire the shares of the U.S. subsidiary. The

22   decision to exclude was a formal, legal election made pursuant to Section 2.5 of the Stalking

23   Horse Asset Purchase Agreement (APA). Exhibit 3 to Motion for Summary Judgment (Dkt. No.

24   77). There was no meeting of the minds regarding a scheme to abandon liabilities. The Purchaser

25   consistently rejected the acquisition of the U.S. MaxSold shares as they were burdened by a $3.1

26

---

[3] Declaration of Christopher Reid ("Reid Decl.").

DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT 1000822913 US
INC.'S MOTION FOR SUMMARY JUDGMENT – 3
2:22-CV-1707 BJR

Million CDN senior lien that would have taken priority over any potential recovery for the Plaintiff. Chris Reid emphasized that any action taken by Canadian MaxSold would be their decision. Declaration of Alex Phillips (Dkt. No. 83, pp. 12-13). More importantly, Plaintiff conflates the actions of U.S. MaxSold's CEO with the actions of the owners of the new entity, U.S. Inc.

Canadian MaxSold and U.S. MaxSold obtained a loan through Silicon Valley Bank (SVB) in March 2022 for $3,123,780.82. Canadian MaxSold and U.S. MaxSold granted SVB a security interest to secure the loan. That security interest was a first priority perfected security interest, and any other security interests would be subordinate to SVB's interest. The SVB security interest in Canadian MaxSold and U.S. MaxSold included its intellectual property, licenses, and other tangible assets used in the conduct of its business as collateral for the loan.

**3.1 Grant of Security Interest.**

(a) Borrower hereby grants Bank, to secure the payment and performance in full of all of the Obligations, a continuing security interest in, and pledges to Bank, the Collateral, wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof.

(b) Borrower acknowledges that it previously has entered, or may in the future enter, into Bank Services Agreements with Bank Services Provider. Regardless of the terms of any Bank Services Agreement, Borrower agrees that any amounts Borrower owes Bank Services Provider thereunder shall be deemed to be Obligations hereunder and that it is the intent of Borrower, Bank, and Bank Services Provider to have all such Obligations secured by the first priority perfected security interest in the Collateral granted herein (subject only to Permitted Liens).[4]

In March 2023, SVB collapsed and its Canadian portfolio was acquired by National Bank of Canada (NBC), which subsequently acquired the security agreement with Canadian MaxSold and U.S. MaxSold. Due to Canadian and U.S. MaxSold's failure to service its debt to NBC, NBC proceeded to begin foreclosure proceedings. As a result, Canadian MaxSold filed for

---

[4] Attached as Ex. 1 to the Reid Decl. is a true and correct copy of the Loan and Security Agreement between Silicon Valley Bank and Canadian MaxSold.

DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT 1000822913 US INC.'S MOTION FOR SUMMARY JUDGMENT – 4
2:22-CV-1707 BJR

**Miller Nash LLP**
605 5th Ave S, Ste 900
Seattle, WA 98104
206.624.8300

bankruptcy protection which resulted in the sale of Canadian MaxSold's assets to Ontario, Inc. In addition, on May 6, 2024, Ontario Inc. purchased the Security Agreement from NBC and therefore has rights to all assets, including all assets to U.S. MaxSold. Ontario Inc. owns all rights to all assets, and U.S. Inc. never acquired any assets.[5]

Finally, predecessor was not "left unable to respond" to claims. *Eagle Pacific* specifically indicates that "[i]f the buying corporation pays sufficient consideration for the seller's assets, the selling corporation's creditors can then seek to satisfy their judgments from the sale proceeds." 135 Wn.2d 894, 901, 959 P.2d 1052. Other Washington courts have held similarly. *See, e.g., Young Construction Co. Inc. v. Hedreen,* 63 Wash.App. 91, 98, 816 P.2d 762 (1991) (refusing to apply successor liability where a debtor's "inability to meet its obligations did not result from the transfer."). Here, the Canadian bankruptcy court's order explicitly transferred assets 'free and clear' of liabilities which is standard in bankruptcy sales and to do anything to the contrary would overturn that court's order. Moreover, as discussed above and as the bankruptcy record shows, Canadian MaxSold's primary secured creditor, NBC, was owed $3,123,780.82 at the time of the bankruptcy filing.[6] Therefore, Plaintiff never had any ability to recover because the senior debt far exceeded the total value of the U.S. subsidiary's assets. Plaintiff is in essence, asking this court to prioritize their claim over the NBC's claims and other creditors that would arguably have greater priority.

C. Defendant is not a "mere continuation" of U.S. MaxSold.

Plaintiff's claim Defendant is a "mere continuation of U.S. MaxSold" is flawed. Plaintiff references *Columbia State Bank v. Invicta Law Grp. PLLC*, but in that case, the business entity was a sole proprietorship. The defendant "continued his individual law practice, using the same name, website, signage, telephone number, offices, insurance, employees, and equipment, and representing the same clients. [He] continued to use the full name Invicta Law Group, PLLC in

---

[5] Attached as Ex. 2 to the Reid Decl. is a true and correct copy of the Assignment of Debt and Security Agreement between National Bank of Canada and Ontario, Inc.

[6] Attached as Ex. 1 to the Declaration of Lisa Lee is a true and correct copy of the MaxSold Creditor Package.

**Miller Nash LLP**
605 5th Ave S, Ste 900
Seattle, WA 98104
206.624.8300

new client engagement letters for nearly six months… also continued under the same contracts as the PLLC." 199 Wn. App. 306, 314, 402 P.3d 330, 335 (2017).

Similarly, in *Leren v. Kaiser Gypsum Co., Inc*., the same individuals controlled the predecessor and successor entities. 9 Wn. App. 2d 55, 61, 442 P.3d 273, 278 (2019), as amended on denial of reconsideration (Aug. 8, 2019). Elementis was the undisputed successor to HCP, and HCP was a successor to Benson. *Id*. HCP purchased 100 percent of Benson's stock, their board of directors voted to dissolve Benson, and HCP then received all of Benson's assets. *Id*. HCP made personnel decisions, including promoting a longtime Benson sales employee to regional manager and retaining Benson's founder as a consultant. *Id*. at 66. HCP expressly identified Benson as a division, maintained largely the same suppliers and customers, and continued operating in the same region. The court opined that these details showed "a series of intentional steps to take control of Benson, making the company's assets part of HCP." *Id*. at 66–67.

In contrast, in this case, Defendant is not operating under the same ownership as before. Christopher Reid is a new, independent owner with no prior ownership interest in either Canadian MaxSold or U.S. MaxSold.[7] Unlike *Columbia State Bank* and *Leren*, this case involves a genuine arm's-length transaction with a new owner. Any contracts assumed by Defendant, were done so under the bankruptcy order issued by the bankruptcy court as provided in the Stalking Horse Asset Purchase Agreement for the purpose of allowing customers the opportunity to realize the benefit of their contracts. Exhibit 3 to Motion for Summary Judgment (Dkt. No. 77). Defendant was permitted to extend offers of employment to employees, provided they report to the bankruptcy court which employees accepted employment contracts and any employees to whom offers of employment were not extended. *Id*.

Plaintiff also attempts to analogize *Leren*, but the court imposed successor liability in that case using the "product line doctrine" whose purpose "is to afford a product liability victim with a meaningful remedy. 9 Wn. App.2d 55, 59, 442 P.3d 273 (Wash. Ct. App. 2019). The Plaintiff

---

[7] Reid Decl.

1    is not seeking a remedy for product liability; therefore, the product line doctrine is not

2    applicable. This doctrine is specific to cases where "successor liability arises where one

3    corporation benefits from another's goodwill after acquiring its product line." *Id*. at 62.

4    Typically, when a plaintiff seeks to hold a successor strictly liable through the product line

5    doctrine, a successor holds itself out as a continuation of the predecessor by continuing to

6    manufacture and sell the predecessor's product line. *Leren at* 63–64. The Plaintiff may seek relief

7    through theories of successor liability, but not through the specific product line doctrine in this

8    case.

9    D.   Defendant does not operate with "substantial continuity" of U.S. MaxSold.

10         Plaintiff provides *Carpenters Health and Security Trust of Western Washington, et al., v.*

11   *Paramount Scaffold, Inc., et al.*, as an analogous case, however, the new entity in that case was

12   created "to address outstanding debt and move forward under a model more attractive to

13   investors with less risk." 159 F.Supp. 3d 1229 (U.S. Dist. W.D. Wash 2016). In this case, the

14   new entity was not created to address outstanding debt. The new entity in fact has had no ties to

15   the predecessor.

16         More importantly, Plaintiff fails to point out that the court included further clarification

17   of substantial continuity factors by referencing *E.E.O.C. v. G–K–G, Inc.,* which states

18   "substantial continuity is "satisfied if no major changes are made in [the] operation". 39 F.3d

19   740, 748 (1994); *Paramount Scaffold, Inc.*, at 1237.

20         Here, in contrast, the new entity, 1000822913 U.S. Inc., began operating after the

21   previous entity, U.S. MaxSold, became insolvent, and their parent company was purchased by

22   Ontario Inc. There is a new CEO, a new Board of Directors after the previous Board members

23   resigned, a new management team where 83 percent of leadership are new hires, and finally the

24   company is controlled by third-party venture capital firms, Christopher Reid, and the new

25   management team.[8]

26

---

[8] Reid Decl.

DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT 1000822913 US
INC.'S MOTION FOR SUMMARY JUDGMENT – 7
2:22-CV-1707 BJR

**Miller Nash LLP**
605 5th Ave S, Ste 900
Seattle, WA 98104
206.624.8300

1

2

### III.   <u>CONCLUSION</u>

3

      For the foregoing reasons, Defendant respectfully requests this Court to grant its motion

4

for summary judgment and dismiss the case with prejudice.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT 1000822913 US
INC.'S MOTION FOR SUMMARY JUDGMENT – 8
2:22-CV-1707 BJR

**Miller Nash LLP**
605 5th Ave S, Ste 900
Seattle, WA 98104
206.624.8300

1    DATED this 9th day of January, 2026.

2                                    MILLER NASH LLP

3                                    */s/ Lisa Lee*
                                     Lisa Lee, WSBA No. 64324
4
                                     */s/ J. Dino Vasquez*
5                                    J. Dino Vasquez, WSBA No. 25533
                                     605 5th Ave. S., Ste. 900
6                                    Seattle, WA  98104
                                     Telephone: 206.624.8300
7                                    Fax: 206.340.9599
                                     Email: lisa.lee@millernash.com
8                                            dino.vasquez@millernash.com

9                                    **Attorneys for Defendant 1000822913 US**
                                     **Inc.**
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT 1000822913 US
INC.'S MOTION FOR SUMMARY JUDGMENT – 9
2:22-CV-1707 BJR

**Miller Nash LLP**
605 5th Ave S, Ste 900
Seattle, WA 98104
206.624.8300

1
2
3
4
5
6

## CERTIFICATE OF SERVICE

The undersigned certifies under penalty of perjury under the laws of the State of

Washington, that the foregoing document was presented to the Clerk of the Court for filing and

uploading to the CM/ECF system, which will send notification of such filing to all counsel of

record.

7

DATED this 9th day of January, 2026.

8
9
10

/s/Semee I. Yim
Semee I. Yim, Legal Assistant
semee.yim@millernash.com

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

CERTIFICATE OF SERVICE - 3
Case No. 2:22-CV-1707 BJR

**Miller Nash LLP**
605 5th Ave S, Ste 900
Seattle, WA 98014
(206) 624-8300