The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VANESSA VANDERBRUG, as
ADMINISTRATOR OF ESTATE OF KAY
ANNE VANDERBRUG,

      Plaintiff,

v.

MAXSOLD INC., *et al.*,

      Defendants.

NO. 22-cv-1707-BJR

**ORDER GRANTING SUMMARY
JUDGMENT**

## I.    INTRODUCTION

This case was brought by Kay Vanderbrug in December 2022 against MaxSold Inc. ("U.S. MaxSold"), alleging that its telemarketing practices violate the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Compl., ECF No. 1. Since that time, the parties agreed to a settlement in principle, U.S. MaxSold's parent company, MaxSold Incorporated ("MaxSold Canada") initiated a bankruptcy proceeding in Canada resulting in its assets being sold, U.S. MaxSold became defunct, Plaintiff filed an amended complaint adding 1000822913 US Inc. ("Defendant") as a successor entity to U.S. MaxSold, and Plaintiff's death resulted in a substitution of Plaintiff to Vanessa Vanderbrug as Administrator of the Estate of Kay Anne Vanderbrug. *See*

ORDER GRANTING SUMMARY JUDGMENT

- 1

ECF Nos. 27, 28, 46, 52, 72, 75. Now pending before the Court is Defendant 1000822913 US Inc.'s Motion for Summary Judgment, ECF No. 76. Having reviewed the record of the case, the motion materials[1] and the relevant legal authorities, the Court will GRANT Defendant's motion. The reasoning for the Court's decision follows.

## II.    BACKGROUND

### A.    Factual background

The factual background of this case is straightforward. Kay Anne Vandebrug's telephone number is listed on the National Do Not Call Registry. Am. Compl. ¶ 35, ECF No. 52. She never consented to receive calls from U.S. MaxSold, and she started receiving telephone solicitation calls regarding U.S. MaxSold's estate sale auction services in April 2022 shortly after her son died. *Id.* ¶¶36-41. After receiving calls from U.S. MaxSold, she called and informed the company that she did not want to be called again, but U.S. MaxSold continued to call her. *Id.* ¶¶ 41-44. Kay Anne Vandebrug lodged a complaint with the Washington Attorney General and then filed a putative class action complaint against U.S. MaxSold for violating the TCPA. *Id.* ¶¶ 45-50.

### B.    Procedural background

The procedural background after the complaint was filed is a little more convoluted. In March 2024, U.S. MaxSold agreed to settle Plaintiff's claims. Am. Compl. ¶ 51; *See* Notice of Settlement, ECF No. 27 (advising the Court that the parties had reached a settlement in principle and expected to finalize it within 45 days). The parties requested and received an extension to file a stipulated dismissal by May 22, 2024, but U.S. MaxSold failed to meet the stipulated deadline,

---

[1] Including the motion, ECF No.76; Plaintiff's response in opposition, ECF No. 82; and Defendant's reply, ECF No. 84; together with attached declarations and exhibits.

ORDER GRANTING SUMMARY JUDGMENT

- 2

nor had it confirmed that it would otherwise follow through on the settlement as agreed, so on May 30, 2024, Plaintiff requested a conference to schedule further proceedings. ECF No. 30. On June 3, 2024, U.S. MaxSold's counsel filed a motion to withdraw and requested an immediate stay of proceedings for 30 days. ECF No. 31. Counsel represented to the Court that U.S. MaxSold had ceased paying their invoices and rebuffed attempts to seek direction. *Id.* Plaintiff objected to the motion to withdraw. ECF. No. 34. The Court held a hearing on the motion, at which time it inquired as to why the settlement had not been finalized. ECF Nos. 37-40; Tr., ECF No. 43. No representative for U.S. MaxSold appeared at the hearing, and counsel revealed the following information: U.S. MaxSold's Canadian parent company, MaxSold Incorporated ("MaxSold Canada"), had filed for bankruptcy; U.S. MaxSold was no longer operating; it had no remaining officers; and its status was delinquent. Tr. 17-18. After hearing from counsel, the Court denied the withdraw motion without prejudice. ECF No. 40.

Thereafter, Plaintiff filed a motion to amend her complaint to add 1000822913 US Inc. as a defendant, asserting that it is a successor entity to U.S. MaxSold and has successor liability for the settlement reached in this case.[2] Mot. Amend, ECF No. 44. Counsel for U.S. MaxSold filed a response to Plaintiff's motion, indicating it could neither state opposition nor non-opposition to the motion because U.S. MaxSold had no client representative to direct its counsel. ECF No. 46. Counsel explained that U.S. MaxSold no longer exists, a company called 1000822913 Ontario Inc. ("Purchaser") had purchased the assets of MaxSold Canada, including the trademarks and auction website but not including the shares of U.S. MaxSold. *Id.* Counsel also revealed that the Purchaser created a U.S. subsidiary named 1000822913 U.S. Inc. ("Defendant") in Delaware on April 26,

---

[2] Since the settlement had not been finalized, in the alternative, Plaintiff seeks to prosecute its claims against the new defendant. Mot. Amend, ECF No. 44.

ORDER GRANTING SUMMARY JUDGMENT

- 3

2024. *Id.* Counsel then filed an unopposed motion to withdraw, which the Court granted. ECF Nos. 48, 51.  The Court also granted Plaintiff's motion to amend her complaint. ECF No. 50. Defendant has had counsel file an appearance, and it has answered the complaint. ECF Nos. 55, 59.

On October 28, 2025, the Court received notice of the death of Plaintiff, Kay Anne Vanderbrug, and an unopposed motion to substitute plaintiff and amend the case caption, which the Court granted. ECF Nos. 72-75.

### C.    The Canadian bankruptcy proceeding

At the commencement of this case, U.S. MaxSold filed a corporate disclosure statement stating that its parent company was a Canadian corporation named MaxSold Incorporated. Disclosure, ECF No. 15. In March 2022, MaxSold Canada and U.S. MaxSold obtained a loan from Silicon Valley Bank with a first priority perfected security interest, including all intellectual property, licenses, auction software and website, and other tangible assets. Reid Decl. Ex. 1, ECF No. 85-1. In 2023, Silicon Valley Bank collapsed and its Canadian portfolio, which included the above loan, was acquired by National Bank of Canada. Reply 4, ECF No. 84; First Amendment to Loan and Security Agreement, Oct. 31, 2023, ECF No. 83-1.

By late 2022, MaxSold Canada had begun experiencing significant cash flow pressures. Trustee's Rpt., Reid Decl. Ex. B, ECF No. 47-2. As a result of its ongoing cashflow issues, MaxSold Canada became unable to make its debt service payments to the National Bank of Canada, and on February 9, 2024, the bank delivered a demand and notice of intention to enforce security under the Canadian Bankruptcy and Insolvency Act. Trustee Records, ECF No. 47-1. To preserve its ongoing operations and value, on February 15, 2024, MaxSold Canada filed with the Official Receiver a

ORDER GRANTING SUMMARY JUDGMENT

- 4

1    notice of intention to make a proposal to its creditors ("NOI Proceeding"), and a Proposal Trustee

2    was named. Trustee's Rpt.

3        As part of the NOI Proceeding under the Proposal Trustee's oversite, MaxSold Canada was

4    able to maintain operations, to preserve employment, maximize recovery through the

5    implementation of a Sale and Investor Solicitation Process ("Sale Process"), and avoid liquidation.

6    Trustee's Rpt. On March 14, 2024, the Canadian Bankruptcy Court approved the Sale Process,

7    which provided a mechanism to solicit interested parties and bids over a 30-day period managed by

8    the Proposal Trustee. *Id.* The Sale Process included a "stalking horse bid," dated March 11, 2024,[3]

9    from an arms-length party, which set a "floor" price that bidders would bid against. *Id.* Although

10   there were multiple expressions of interest, and a second bid was received,[4] the "stalking horse bid"

11   was the only qualified bid, and was declared the successful bid under the Sale Process. *Id.* The sale

12   transaction closed on May 6, 2024. *Id.* Under the Asset Purchase Agreement, the Purchaser

13   purchased the assets, including the intellectual property and certain contracts of the business, and

14   the Proposal Trustee used the net proceeds to settle claims, although there were insufficient funds

15   for all claims. *Id.* On April 25, 2024, the Canadian Bankruptcy Court approved the sale transaction.

16   Ontario Superior Court of Justice (In Bankruptcy and Insolvency) April 25, 2024 Assignment,

17   Approval and Vesting Order, ECF No. 83-9. On April 26, 2024, the Purchaser, a Canadian entity,

18   created a subsidiary U.S. entity, Defendant, which has a license to allow U.S. users access to the

19   online auction platform. ECF No.47-4; Reply 2.

20

21

22

23

[3] According to the Proposal Trustee, MaxSold Canada had begun informally seeking an investor/purchaser in February 2024. Trustee's Rpt.
[4] The second bid did not qualify and was withdrawn the day after it was submitted. Trustee's Rpt.

24   ORDER GRANTING SUMMARY JUDGMENT

25   - 5

Defendant now seeks summary judgment in its favor with all claims against it dismissed with prejudice. Mot., ECF No. 76. Defendant asserts that the undisputed record before the Court demonstrates that it is not a successor to U.S. MaxSold and, therefore, it cannot be held liable under a successor-liability theory. *Id.*

### III.  LEGAL STANDARD

"Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017) (quoting *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016)); Fed. R. Civ. P. 56(a). "The moving party bears the initial burden of identifying portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020). "If the moving party meets this burden, the opposing party must then set out specific facts showing a genuine issue for trial to defeat the motion." *Id.* If the evidence proffered by the opposing party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).

### IV.  DISCUSSION

Plaintiff contends that MaxSold Canada's Chief Executive Officer, Russ Patterson, fraudulently coordinated with a potential buyer, Chris Reid, to sell the assets of U.S. MaxSold without the class action settlement liability, and the buyer then created a new company, Defendant, to operate in the United States. Am. Compl. ¶¶ 51-61. Plaintiff alleges that Defendant is, therefore, liable for the settlement under a theory of successor entity liability. *Id.* ¶¶ 62-66. Plaintiff argues

ORDER GRANTING SUMMARY JUDGMENT

- 6

that Defendant is, at a minimum, a "mere continuation" of U.S. MaxSold, and both Washington law and federal common law establishes successor liability.[5] Opp'n, 3-4. Defendant asserts that it acquired neither U.S. MaxSold's assets nor liabilities, is not a "mere continuation," it only operates through a license from the Purchaser, and there has not been "substantial continuity" between U.S. MaxSold and the Defendant. Mot. 1-5; Reply 2-3.

Under Washington law, a corporation purchasing the assets of another does not automatically become liable for the seller's debts and obligations. *Meisel v. M & N Mod. Hydraulic Press Co.*, 97 Wn. 2d 403, 405 (1982). However, there are exceptions that can leave an asset purchaser responsible for the predecessor's legal or financial burdens. *Id.* These exceptions include: "(a) the purchaser expressly or impliedly agrees to assume liability; (b) the purchase is a *de facto* consolidation or merger; (c) the purchaser is a mere continuation of the seller; or (d) the transfer of assets is for the fraudulent purpose of escaping liability." *Id.* "The basis of this traditional corporate law doctrine is that a sale of corporate assets transfers an interest separable from the corporate entity and does not result in a transfer of unbargained-for liabilities from the seller to the purchaser." *Long v. Home Health Servs. of Puget Sound, Inc.*, 43 Wn. App. 729, 732 (1986) (quoting *Hall v. Armstrong Cork, Inc.*, 103 Wn.2d 258, 261–62 (1984)). The party asserting successor liability has the burden of proving that one of the exceptions applies. *See Eagle Pac. Ins. Co. v. Christensen Motor Yacht Corp.*, 135 Wn.2d 894, 901 (1998).

The first two exceptions—express or implied assumption of liability, and *de facto* consolidation or merger—are not at issue here. *See* Opp'n 11, 13 (indicating Plaintiff's arguments only under three exceptions: fraud, mere continuation, and common law liability because there was

---

[5] Plaintiff notes that the "traditional exceptions under federal common law are identical to those under Washington law." Opp'n 12 (quoting *United States ex rel. Klein v. Omeros Corp.*, 897 F. Supp. 2d 1058, 1065 (W.D. Wash. 2012)).

ORDER GRANTING SUMMARY JUDGMENT

- 7

notice of the settlement agreement with "substantial continuity"). Further, the record is clear that Defendant is not the purchaser of U.S. MaxSold; 1000822913 Ontario Inc. was the purchaser of MaxSold Canada's assets, and U.S. MaxSold was a subsidiary of MaxSold Canada. Asset Purchase Agreement, Opp'n Ex. M, ECF No. 83-13; *see also* Langley Decl. Ex. 3, ECF No. 77; Assignment Agreement, Reid Decl. Ex. 2, ECF No. 85-2. The Canadian Bankruptcy Court approved the sale of assets to Purchaser, free and clear of claims and without assuming liabilities excepting specific limited Assumed Obligations, and the sale did not include U.S. MaxSold shares. *See* Ontario Superior Court of Justice (In Bankruptcy and Insolvency) April 25, 2024 Assignment, Approval and Vesting Order.

The Court will consider the remaining exceptions to determine if successor liability applies under the circumstances in this case.

### A.    Mere continuation and "substantial continuity"

Plaintiff argues that successor liability applies because Defendant is a "mere continuation" of U.S. MaxSold, and because under federal common law, Defendant had notice of the settlement agreement, and there was "substantial continuity" between Defendant and U.S. MaxSold. Opp'n 13, 16, 18. Under Washington state law, "mere continuation" requires (a) common identity of officers, directors, and stockholders of the two corporations; and (b) the insufficiency of consideration transferred to the predecessor for the assets transferred. *Columbia State Bank v. Invicta L. Grp. PLLC*, 199 Wn. App. 306, 320 (2017).

As previously observed, based on the record before the Court, there is no evidence that Defendant is a mere continuation of U.S. MaxSold. Defendant did not purchase the assets of U.S. MaxSold, and both the Purchaser and the Defendant have different ownership from U.S. MaxSold.

ORDER GRANTING SUMMARY JUDGMENT

- 8

1    *See, e.g.*, Reid Decl. ¶ 5 (clarifying that Defendant "operates with new owners, a new Board of

2    Directors, and is controlled by third-party venture capital firms, the new CEO, and the new

3    managerial team of personnel who were not associated with U.S. MaxSold"); Debt and Assignment

4    Agreement, May 6, 2024, Reid Decl. Ex. 2 (showing that Purchaser purchased the Security

5    Agreement from National Bank of Canada and therefore has rights to all assets).

6         Federal common law relaxes this requirement by also considering the continuity of the

7    business operations (same employees, same jobs, same products) and whether the buyer had notice

8    of the liability before the sale. *See Fall River Dyeing & Finishing Corp. v. N.L.R.B.*, 482 U.S. 27,

9    43 (1987) (considering whether the business operations continued without substantial change);

10   *IBEW Pac. Coast Pension Fund v. Harris Elec. Inc.*, No. C18-0181JLR, 2020 WL 2526532, at *4

11   (W.D. Wash. May 18, 2020) ("The federal common law successor liability doctrine 'allows

12   lawsuits against even a genuinely distinct purchaser of a business if (1) the successor had notice of

13   the claim before acquisition, and (2) there was a substantial continuity in operations of the business

14   before and after the sale.'" (quoting *Carpenters Health & Sec. Tr. of W. Wash. v. Paramount

15   Scaffold, Inc.*, 159 F. Supp. 3d 1239, 1234 (W.D. Wash. Feb. 1, 2016))).

16        The Court notes that the substantial continuity doctrine is established in the context of labor

17   law, but federal courts have indicated that it is not easily extended to other areas of federal common

18   law. *See New York v. Nat'l Servs. Indus., Inc.*, 352 F.3d 682, 686 (2d Cir. 2003) (citing *Golden

19   State Bottling Co. v. NLRB*, 414 U.S. 168, 182 n. 5 (1973); *John Wiley & Sons, Inc. v. Livingston*,

20   376 U.S. 543, 551 (1964)); *see also U.S. ex rel. Klein v. Omeros Corp.*, 897 F. Supp. 2d 1058, 1067

21   (W.D. Wash. 2012) (applying only the four traditional exceptions to successor non-liability).

22   Regardless, the evidence does not support Plaintiff's substantial continuation theory. While

23   Purchaser was aware of the subsidiary company's lawsuit and the settlement in principle, U.S.

24   ORDER GRANTING SUMMARY JUDGMENT

25   - 9

1    MaxSold's shares were not included in the purchase, and Defendant did not yet exist when the

2    Canadian Bankruptcy Court approved the sale transaction. *Id.*; Ontario Superior Court of Justice

3    (In Bankruptcy and Insolvency) April 25, 2024 Assignment, Approval and Vesting Order; Trustee

4    Rpt.; Ex. A, ECF No. 47-1. U.S. MaxSold's shares and corresponding liabilities, if any, remained

5    in the insolvent corporation. Defendant is a wholly owned subsidiary of Purchaser, but Defendant

6    did not purchase any entities through the bankruptcy proceedings, did not purchase any U.S.

7    MaxSold assets, and operates only under licensing agreements with Purchaser. Reid Decl. ¶¶ 2-5.

8    Certain U.S. MaxSold contracts were assumed by the Purchaser under the Canadian Bankruptcy

9    Court's Order as provided for under the purchase agreement, and offers of employment to U.S.

10   MaxSold employees were permitted provided all offers and non-offers were reported to the

11   bankruptcy court.[6] *See* Asset Purchase Agreement. This was part of a court-approved process that

12   was overseen by the Proposal Trustee in an effort to preserve employment and support customers

13   with contracts.

14        In this case, the evidence indicates there is a new parent company and a new subsidiary

15   company, both with entirely new ownership and leadership. Further, the settlement agreement was

16   never finalized, which would require Plaintiff to proceed with prosecuting alleged TCPA violations

17   by the prior company against new owners. These facts do not support successor liability under an

18   equitable substantial continuation theory.

19        **B.    Fraudulent purpose**

20        Plaintiff contends that "Defendant collected its assets through fraud to escape liability and

21   without paying consideration." Opp'n 3. 13-16. A fraudulent transfer theory can be proven by

22

23   _____

     [6] As of February 12, 2025, one full-time employee and 42 part-time casual employees previously worked for U.S.
     MaxSold. ECF No. 83-7.

24   ORDER GRANTING SUMMARY JUDGMENT

25    - 10

showing that there was insufficient consideration, and the assets were transferred to avoid the reach of the creditors, which demonstrates a lack of good faith. *Eagle Pac. Ins. Co. v. Christensen Motor Yacht Corp.*, 135 Wn. 2d 894, 902-10 (1998); *Northgate Ventures LLC v. Geoffrey H. Garrett PLLC*, 10 Wn. App. 2d 850, 863 (2019). However, as Defendant explains, it did not obtain assets from U.S. MaxSold, and the sale of assets was conducted under the oversight of the Proposal Trustee and the Canadian Bankruptcy Court, not for the purpose of escaping liability to the Plaintiff, but to avoid liquidation by the National Bank of Canada. Reply 3-5 (citing the bankruptcy record). The Sale Process and the sale transaction was approved by the Canadian Bankruptcy Court, and Plaintiff has failed to satisfy the burden of showing inadequate consideration or improper purpose by the Purchaser or by Defendant.

Accordingly, the Court finds that Plaintiff's claim of successor liability fails, and Defendant's motion for summary judgment will be granted.

## V.    CONCLUSION

For the foregoing reasons:

1.  Defendant 1000822913 US Inc.'s Motion for Summary Judgment, ECF No. 76, is GRANTED;

2.  Judgment shall be entered by separate Order.

DATED this 16th day of March 2026.

Barbara Jacobs Rothstein
United States District Judge